By the Court—Moncrief, J.
The complaint, in this action, among other things, alleged an agreement “ that the defendants should have one working day for each one thousand bushels of salt, in New York, for discharging, and in case of detention beyond that time, twenty-five dollars for each day’s detention;” and again, “that the said vessel was also detained, in discharging, at the City of New York, five days beyond the time required in and by said charter;” the agreement itself provides for the payment of demurrage to the plaintiffs, * * “ for every day so detained, provided, such detention shall happen by default of the said parties of the second part (the defendants) or their agent.”
The answer of the defendants denied “that any demur-rage or sum of money whatever, by reason of any delay or detention in discharging at the port of New York, is chargeable to or payable by the defendants, under said charter party, or that said such delay, if any, was occasioned by the defendants and averred that * * # “ the delay or detention, if any, was occasioned by and is chargeable to the said plaintiffs.”
The issues to be determined, and the only dispute between the parties, appear to be:
1st. Was there any delay or detention; and,
2d. If there was delay or detention, by which party was it occasioned, and to whom is it chargeable.
*272 The vessel arrived at this port on the 2d day of December, and was immediately reported, by the captain, to the defendants; he was directed where to proceed, with the view to the delivery of the cargo, and took his vessel to the place assigned to him on the night of the 2d or the next day, the 3d of December. - Lay days, by the general rule, commence to run from the time the vessel enters the dock. (1 Parsons on Maritime Law, 262, and cases there cited.) The vessel was not discharged until the 12th of December, and, it is apparent, the vessel was detained, at the port of Hew York, at least nine working days, (one Sunday, the 8th December, intervening between her arrival and discharge.)
Upon the remaining issue, to whom this delay is to be attributed and chargeable, there was considerable testimony of a conflicting character; the evidence of the captain tended to show a clear default, of the defendants; their refusal to discharge his vessel until after another vessel, the schooner Hound, was discharged. This testimony was corroborated by the fact, which I do not see anywhere contradicted, that the plaintiffs’ vessel did not commence to discharge until after the Hound was discharged, on the 10th of December. On the other side, the defendants offered evidence tending to show that the delay was caused by the inability to procure tubs from the government officers, into which to discharge the salt, &c., and upon this subject much testimony was given of a contradictory character. There was also evidence tending to show a direction to the captain to discharge the cargo, which put the delay upon the plaintiffs, but this evidence was also contradicted. Under such circumstances, the verdict of the Jury should be conclusive; the Jury having found a verdict for the plaintiffs, it should not be disturbed.
The defendants, upon the trial, admitted that the amount of the verdict is correct, “if anything was due for demurrage.” Hence, the suggestion that the evidence will not warrant the finding in favor of the plaintiffs for five days detention cannot be entertained.
*273 The delivery,' by the terms of the charter party, was to be made “ alongside of the plaintiffs’ vessel, within reach of her tackle.” If, therefore, the' plaintiffs were directed to take their vessel to a certain dock, and the vessel was so takén, and was in readiness, alongside that dock, to discharge her cargo, on the 2d of December, the working lay days commenced to run from that time, and there was no error in the learned Justice so charging. Some of the exceptions to the charge embrace so much of the language used by the learned Judge as to render it impossible to discover what portion the exception was intended to cover; such exceptions are never entertained; a party must point out, with clearness and precision, the portion to which he objects; the part quoted, in the second point, on behalf of the appellants, is but a portion of the proposition submitted to the Jury, which, as a whole, is correct.
Perceiving no error prejudicial to the rights of the defendants, nor any ruling against them, which could have affected the Jury in rendering their verdict, I am of the opinion that the judgment should be affirmed.